### ESTADO LIBRE ASOCIADO DE PUERTO RICO
### TRIBUNAL DE PRIMERA INSTANCIA
### CENTRO JUDICIAL DE SAN JUAN
### SALA SUPERIOR

| | |
|---|---|
| ROBERTO FONTANEZ RIVERA, su esposa IRMA SANTOS DE JESÚS y la SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR AMBOS<br><br>Querellantes<br><br>v.<br><br>SUIZA DAIRY CORPORATION; TRIPLE S SALUD, INC.; DELTA DENTAL OF PUERTO RICO, INC.<br><br>Querellada | Civil Núm. SJ2021CV03138 (802)<br><br>Despido Injustificado (Ley 80);<br>Discrimen por Edad (Ley 100);<br>Ley COBRA;<br>Daños y Perjuicios (Art. 1536 del C.Civil);<br>Procedimiento Sumario Laboral (Ley 2-1961) |

### EMPLAZAMIENTO
### LEY DE PROCEDIMIENTO SUMARIO DE RECLAMACIONES LABORALES

ESTADOS UNIDOS DE AMÉRICA, SS
EL PRESIDENTE DE LOS ESTADOS UNIDOS
EL ESTADO LIBRE ASOCIADO DE PUERTO RICO

A: Triple S Salud, Inc.
Triple S Building
Ave. Muñoz Rivera, San Juan, P.R. 00927

POR LA PRESENTE, se le emplaza, con copia de la Querella radicada en su contra al amparo de la Ley Núm. 2 de 17 de octubre de 1961, según enmendada, apercibiéndole que deberá presentar su contestación por escrito a través del Sistema Unificado de Manejo y Administración de Casos (SUMAC), al cual puede acceder utilizando la siguiente dirección electronica: https://unired.ramajudicial.pr, salvo que se represente por derecho propio, en cuyo caso deberá presentar su alegación responsiva en la secretaría del tribunal; con constancia de haber notificado copia de la misma al abogado de la parte querellante o a ésta si hubiere comparecido por derecho propio, dentro de diez (10) días de haber sido diligenciado este emplazamiento, si este se hiciere en la Región Judicial donde se promueve la acción, o dentro de quince (15) días en los demás casos. Se le apercibe, además, que, si así no lo hiciere, se dictará sentencia en su contra, concediendo el remedio solicitado, sin más citarle ni oírle.

**LCDO. ANDRÉS C. GORBEA DEL VALLE**
**RUA NÚM. 16690**
**PO BOX 195191**
**SAN JUAN, P.R. 00919**
andres_gorbea@yahoo.com

Expedido bajo mi firma y sello del Tribunal, el 25 de mayo de 2021.



Griselda Rodríguez Collado
Nombre de la Secretaria Regional

*Awilda Calderón Rodríguez*
Por: Secretaria Auxiliar
Nombre y Firma del Secretario
Auxiliar del Tribunal

K089

## DILIGENCIAMIENTO DEL EMPLAZAMIENTO POR PERSONA PARTICULAR

Yo, _Juan Caraballo Rivera_, declaro tener capacidad legal conforme la Regla 4.3 de Procedimiento Civil de Puerto Rico, y certifico que el diligenciamiento del emplazamiento y de la querella del caso de referencia fue realizado por mí, el _27_ de ~~septiembre~~ _mayo_ de 2021, de la siguiente forma:

[ ] Mediante entrega personal a la parte querellada en la siguiente dirección física: _____.

[ ] Accesible en la inmediata presencia de la parte querellada en la siguiente dirección física: _____.

[X] Dejando copia de los documentos a un(a) agente autorizado(a) por la parte querellada o designada por ley para recibir emplazamientos en la siguiente dirección física: _Triple S Building A/C meliza morales_.

[ ] No se pudo diligenciar el emplazamiento personalmente debido a que: _____.

## COSTOS DEL DILIGENCIAMIENTO
$_____

## DECLARACIÓN DEL EMPLAZADOR

Declaro bajo pena de perjurio, conforme a las leyes del Estado Libre Asociado de Puerto Rico, que la información provista en el diligenciamiento del emplazamiento es verdadera y correcta.

Y PARA QUE ASÍ CONSTE, suscribo la presente en _____, Puerto Rico, el ____ de mayo de 2021.

_[firma]_                                           _____
Firma del Emplazador                                Dirección del Emplazador

AFFIDAVIT NÚM. _____

  Jurado y suscrito ante mí por _____, de las circunstancias personales anteriormente mencionadas, a quien doy fe de _____.

En _____, Puerto Rico, el ____ de mayo de 2021.

_____
Nombre del Notario o Secretaria Regional

Por: _____
Nombre y Firma de la Secretaria Auxiliar del Tribunal

2

ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE PRIMERA INSTANCIA
CENTRO JUDICIAL DE SAN JUAN
SALA SUPERIOR

| | |
|---|---|
| ROBERTO FONTANEZ RIVERA, su esposa IRMA SANTOS DE JESÚS y la SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR AMBOS<br><br>Querellantes<br><br>v.<br><br>SUIZA DAIRY CORPORATION; TRIPLE S SALUD, INC.; DELTA DENTAL OF PUERTO RICO, INC.<br><br>Querellada | Civil Núm.<br><br>Despido Injustificado (Ley 80);<br>Discrimen por Edad (Ley 100);<br>Ley COBRA;<br>Daños y Perjuicios (Art. 1536 del C.Civil);<br>Procedimiento Sumario Laboral (Ley 2-1961) |

## QUERELLA

COMPARECEN Roberto Fontanez Rivera ("Fontanez"), su esposa Irma Santos De Jesús ("Santos") y la Sociedad Legal de Gananciales compuesta por ambos (denominados en conjunto como "los Querellantes"), por conducto de la representación legal que subscribe, y muy respetuosamente EXPONEN, ALEGAN y SOLICITAN:

### I. Las Partes

1. Fontánez y Santos son mayores de edad y están casados bajo el regimen económico de Sociedad Legal de Gananciales. Su dirección física y postal es Urb. Caribe Gardens, Calle Alelí K-6, Caguas, Puerto Rico, 00725. El número de teléfono de Fontánez es (787) 396-1375 y el número de teléfono de Santos es (787) 379-9942.

2. La co-Demandada Suiza Dairy Corporation ("Suiza Dairy") es una corporación doméstica con fines de lucro con dirección física en la Ave. San Patricio & Ave. De Diego, San Juan, Puerto Rico, 00921, dirección postal en PO Box 363207, San Juan, Puerto Rico 00936, y teléfono (787) 792-7300. En todo momento pertinente a esta Querella, Suiza Dairy fue el patrono de Fontánez.

3. La co-Demandada Triple S Salud, Inc. ("Triple S") es una compañía de seguros organizada bajo las leyes de Puerto Rico, con dirección física en el Triple S Plaza Building, Ave. Muñoz Rivera, San Juan, P.R. 00927, dirección postal en PO Box 363786, San Juan, Puerto Rico 00936-3786, y teléfono (787) 758-4888. En todo momento pertinente a esta Querella, Triple S fue el administrador del plan de salud grupal del cual Fontánez y Santos eran beneficiarios.

4. La co-Demandada Delta Dental of Puerto Rico, Inc. ("Delta Dental") es una compañía de seguros organizada bajo las leyes de Puerto Rico, con dirección física en el Metro Office Park, 14 Calle 2 Suite 200, Guaynabo, Puerto Rico 00968, dirección postal en el PO Box 9020992, San Juan, Puerto Rico 00902-0992, y teléfono (939) 205-3300. En todo momento pertinente a esta Querella, Delta Dental fue el administrador del plan dental del cual Fontánez y Santos eran beneficiarios.

## II. Los Hechos

5. Fontánez es un hombre de setenta y cuatro (74) años de edad, que trabajó como empleado de Suiza Dairy por más de cincuenta años, específicamente desde el 20 de junio de 1970 hasta el 18 de diciembre de 2020.

6. Fontánez ocupó por más de cincuenta (50) años la posición de *Teller* (Cajero Especial) para Suiza Dairy.

7. Habiendo trabajado más de medio siglo para Suiza Dairy, Fontánez era prácticamente una institución dentro de dicha empresa. Entre otras distinciones, Fontánez fue Presidente por ocho (8) años de la Cooperativa de Ahorro y Crédito Rico Dairy, cuyos socios son, entre otros, empleados de Suiza Dairy. Fontánez también fue Presidente de los Comités de Supervisión y de Arbitraje de la mencionada Cooperativa por veintiocho (28) y doce (12) años, respectivamente.

8. Como parte de sus funciones como *Teller* (Cajero Especial) por más de 50 años, entre otras tareas, Fontánez hacía los depósitos de miles de dólares y tenía acceso a la bóveda (caja fuerte) de Suiza Dairy. A través de sus 50 años de servicio, decenas de millones de dólares pasaron por las manos de Fontánez, y jamás faltó un solo centavo.

9. Durante su empleo, con cierta frecuencia, Fontánez solicitaba a la Gerente de Contabilidad de Suiza Dairy, Marisol Maldonado ("Maldonado"), que lo autorizara a cambiar cheques en efectivo. Es decir, si Fontánez necesitaba dinero en efectivo, Fontánez le solicitaba a Maldonado que lo autorizara a hacer un cheque personal a nombre de "cash", depositarlo en la caja registradora de Suiza Dairy y tomar la misma suma en efectivo de la caja registradora. Maldonado siempre autorizaba dichas peticiones de Fontánez, iniciando en cualquier esquina los cheques personales que Fontánez cambiaba en la caja de la compañía. Demás está decir que

2

jamás faltó un solo centavo, y Fontánez jamás fue imputado de falta alguna relacionada con dicha práctica o costumbre.

10. Todas las evaluaciones de desempeño de Fontánez fueron excelentes o como mínimo, aceptables.

11. Durante los últimos años de su empleo, sin embargo, Fontánez fue objeto de múltiples comentarios discriminatorios por razón de su edad por parte de compañeros de trabajo tales como Víctor Burgos, entre otros, mientras los supervisores se hacían de la vista larga. De igual forma, supervisores tales como Rafael Marcano también le hacían este tipo de comentarios a Fontánez. Estos comentarios eran practiamente a diario, y consistían en decirle a Fontánez que estaba viejo, que por qué no le dejaba el trabajo a una persona más joven, que hasta cuándo pensaba seguir trabajando, que por qué no se retiraba y se iba a coger seguro social, entre otras cosas.

12. De igual forma, durante los últimos años de empleo de Fontánez, Suiza Dairy llevó a cabo múltiples actos discriminatorios contra Fontánez por razón de su edad. Así, por ejemplo, en el año 2019 Fontánez fue suspendido de empleo y sueldo por una semana por supuestamente (1) hacer "lapacheros" en el baño de los caballeros, y (2) gritarle a los vendedores, siendo las dos cosas totalmente falsas. De hecho, Eduardo Sandoval, empleado de mantenimiento, dio fe que la persona que hacía los "lapacheros" en el baño no era Fontánez, sino unos vendedores que entraban al baño a lavarse la cara y hacían unos "lapacheros". Además, los propios vendedores declararon que Fontánez no les gritaba y que su trato hacia ellos siempre fue cordial.

13. Cuando Fontánez cumplió quince (15) años de empleo en Suiza Dairy, le obsequiaron una medalla. Cuando éste cumplió veinticinco (25) años de empleo, le obsequiaron un reloj. Cuando éste cumplió cuarenta (40) años de empleo, le obsequiaron $500 dólares. Sin embargo, cuando cumplió los cincuenta (50) años de empleo en Suiza Dairy, no le obsequiaron nada. Para ese momento, obviamente, ya existía un plan dirigido a terminar el empleo de Fontánez por razones discriminatorias.

14. El viernes 4 de diciembre de 2020, Fontánez solicitó a la Gerente de Contabilidad, Maldonado, que lo autorizara a cambiar un cheque personal a nombre de "cash" por la cantidad

3

de $1,700.00. Como de costumbre, Maldonado lo autorizó iniciando el cheque personal de Fontánez en una esquina.

15. Por inadvertencia, sin embargo, Fontánez no tenía fondos suficientes en su cuenta de banco para pagar el cheque personal de $1,700.00 que había hecho a nombre de "cash". Por tal razón, el cheque "rebotó" por falta de fondos suficientes.

16. Así las cosas, el lunes 7 de diciembre de 2020, a eso de las 4:30 p.m., Gisela González ("González"), Directora de Recursos Humanos de Suiza Dairy y quien llevaba solo ocho (8) meses trabajando en la compañía, se reunió con Fontánez y lo acusó falsamente de haber alterado el cheque personal que éste había cambiado en efectivo el viernes anterior, lo que Fontánez en todo momento negó. González le informó a Fontánez que estaba suspendido de empleo y sueldo por dos (2) días, en lo que ella supuestamente hacía una investigación. Obviamente, la Compañía no hizo ninguna investigación, pues ese mismo lunes 7 de diciembre de 2020 ya González había acusado a Fontánez de haber alterado el cheque, por lo que obviamente ya González había llegado a una conclusión.

17. Ese lunes 7 de diciembre de 2020, Fontánez fue sacado de su área de trabajo, sin permitírsele cuadrar su caja, la cual había recibido dinero de varios vendedores, y fue sacado fuera de su oficina como un delincuente por su supervisor Rafael Marcano, frente a todos sus compañeros de trabajo, quienes se enteraron por voz de la propia Compañía de que Fontánez supuestamente había alterado un cheque personal y había robado dinero a la Compañía, lo que es totalmente falso.

18. Fontánez fue suspendido sin recibir ningún documento formal acreditando dicha acción adversa de empleo. Es decir, la suspension fue verbal.

19. El miércoles 9 de diciembre de 2020, Fontánez no recibió ninguna comunicación de la Compañía. Por tal razón, y ya sabiendo que su cheque personal había rebotado por falta de fondos, Fontánez se personó a las facilidades de la Compañía con $1,700.00 dólares en efectivo para pagar el referido cheque. Sin embargo, los guardias de seguridad de la compañía, luego de llamar a González, no le permitieron la entrada a las facilidades.

20. El viernes 11 de diciembre de 2020, Fontánez nuevamente visitó las facilidades de la Compañía con los $1,700.00 dólares en efectivo para pagar el cheque y, además, para saber

4

cuándo podía volver a trabajar. Sin embargo, nuevamente los guardias de seguridad de la compañía, luego de llamar a González, no le permitieron a Fontánez entrar a las facilidades.

21. El lunes 14 de diciembre de 2020, Fontánez visitó por tercera vez las facilidades de la Compañía con los $1,700.00 dólares en efectivo para pagar el cheque, y conocer cuándo podría reincorporarse al trabajo. Sin embargo, nuevamente los guardias de seguridad de la Compañía, luego de hablar con González, le impidieron la entrada a Fontánez.

22. Durante esa semana, Fontánez intentó comunicarse en múltiples ocasiones con su supervisor directo Rafael Marcano y con la Directora de Recursos Humanos, González, pero sus intentos fueron infructuosos.

23. El miércoles 16 de diciembre de 2020, Fontánez visitó por cuarta vez las facilidades de la Compañía con los $1,700.00 en efectivo y para saber cuándo podría volver a trabajar. En dicha ocasión, los guardias de seguridad no lo dejaron entrar, pero le dijeron que González lo iba a llamar.

24. Ese día, miércoles 16 de diciembre de 2020, González llamó a Fontánez y lo citó a una reunión para el viernes 18 de diciembre de 2020 a las 2:00 p.m.

25. Llegado el día de la reunión, el viernes 18 de diciembre de 2020, González le informó a Fontánez que estaba despedido de su empleo por supuestamente haber alterado el cheque personal que había cambiado el viernes 4 de diciembre de 2020. Según González, Maldonado había autorizado a Fontánez a cambiar un cheque de $700.00, y no de $1,700.00, e imputó a Fontánez haber alterado el cheque para que fuera de $1,700.00. La alegación de González es total y absolutamente falsa.

26. Acto seguido, González le informó a Fontánez que, considerando sus 50 años de servicio, la Compañía estaba dispuesta a ofrecerle tres (3) meses de salario y seis (6) meses de plan medico, a cambio de que éste firmara una carta de renuncia. González, además, le indicó a Fontánez que, si éste no firmaba la carta de renuncia, la Compañía no le iba a dar nada, no le iban a aceptar el dinero para pagar el cheque que había rebotado y, además, le iban a radicar cargos criminales por la alegada alteración del cheque, lo cual nunca ocurrió.

27. Sintiéndose totalmente presionado, coaccionado, e intimidado para firmar la carta de renuncia que le estaba presentando la Compañía, Fontánez solicitó a González que le permitiera llamar a un abogado para consultarle la situación, pero González le dijo que no podia

5

llamar a nadie, que tenia que firmar la carta de renuncia ahora o atenerse a las consecuencias. Fontánez, bajo presión, intimidación, coacción y amenaza, y expresando verbalmente su desacuerdo, firmó la carta de renuncia preparada por Suiza Dairy, la cual no tiene validez alguna.

28. Luego de firmada la carta, la Compañía aceptó los $1,700.00 en efectivo que había llevado Fontánez para pagar el cheque.

29. Las razones para el despido de Fontánez son totalmente falsas y pretextos para discriminar contra Fontánez por razón de su edad. Fontánez no alteró ningún cheque.

30. Luego de su despido, Fontánez fue reemplazado por Marcos Quiles, un empleado mucho más joven que Fontánez, con menor salario, y quien cubría a Fontánez cuando éste se iba de vacaciones.

31. A causa del despido discriminatorio de Fontánez por parte de la Compañía, Fontánez sufrió, y aún sufre severos daños económicos y emocionales. Por ejemplo, Fontánez tenia la intención de trabajar, por lo menos seis (6) años más, por lo que, considerando su salario de $36,500 anuales, los daños económicos de Fontánez ascienden a aproximadamente $219,000.00, los cuales se reclaman en esta Querella.

32. A causa de su despido discriminatorio por su edad, y de la difamación de la cual fue objeto, siendo un empleado de más de cincuenta (50) años en la empresa, Fontánez ha sufrido severos daños emocionales, tales como verguenza, tristeza, enojo, coraje, depresión, llanto, frustración, impotencia, entre otras emociones negativas. Los daños emocionales de Fontánez se estiman en, por lo menos, $100,000.00.

33. La Compañía difamó a Fontánez diseminando entre todo el personal de la empresa el falso rumor de que Fontánez había alterado un cheque y había robado dinero a la Compañía, lo cual es totalmente falso. De hecho, múltiples compañeros de Fontánez se comunicaron con él y le preguntaron si era cierto que él había sido despedido por robar a la Compañía, lo cual Fontanez en todo momento ha negado, por ser falso.

34. La excelente reputación que tenía Fontánez en la Compañía, por sus más de 50 años de excelente servicio, se fue al piso por la difamación y las actuaciones culposas y negligentes de Suiza Dairy.

35. Santos, la esposa de Fontánez, también ha sufrido severos daños económicos y emocionales a causa del despido discriminatorio de Fontánez. De hecho, a Santos le dio un ataque de pánico y llanto cuando Fontánez le dio la noticia de su despido.

### III. Causas de Acción

**A.    Despido Injustificado – Ley 80-1976**

36. Fontánez no alteró ningún cheque, ni robó suma alguna de dinero a la Compañía. Luego de más de cincuenta (50) años de empleo, Suiza Dairy le fabricó un caso y lo despidió injustificadamente a base de una alegación totalmente falsa. No habiendo justa causa para su despido, Fontánez tiene derecho a una "mesada" de $123,538.46 (*i.e.*, 6 meses y 150 semanas de salario) de conformidad con la Ley 80-1976.

**B.    Discrimen por Edad – Ley 100-1959**

37. Los hechos alegados anteriormente demuestran que Fontánez fue despedido discriminatoriamente de su empleo por razón de su edad. Durante sus últimos años de empleo Fontánez fue objeto, casi a diario, de comentarios discriminatorios por su edad, de parte de compañeros de trabajo y de supervisores, tales como Rafael Marcano. Además, a Fontánez se le amonestó en múltiples ocasiones a base de hechos falsos, lo que demuestra que la Compañía constantemente buscaba pretextos para disciplinar a Fontánez. Finalmente, Fontánez fue despedido a base de una alegación falsa de que había alterado un cheque y robado dinero a la Compañía, y fue reemplazado por un empleado más joven. Por tanto, de conformidad con la Ley 100-1959, Fontánez reclama la suma de $100,000 en daños emocionales, más $219,000.00 en daños económicos (equivalente a seis años más de salario), más la doble penalidad que establece el estatuto antes mencionado.

**C.    Difamación**

38. Fontánez fue difamado por Suiza Dairy en el sentido de que lo acusaron falsamente de haber alterado un cheque y robado dinero a la Compañía, al punto de que fue despedido de su empleo por dichas falsas razones. Fontánez sufrió severos daños a su reputación, los cuales le causaron graves daños emocionales, los cuales se estiman en no menos de $100,000.00.

7

**D. Ley Federal COBRA**

39. Los Demandantes eran beneficiarios de los planes de salud grupal y dental ofrecidos por Suiza Dairy a sus empleados y cónyuges, los cuales eran administrados por las co-Demandadas Triple S y Delta Dental, respectivamente.

40. Luego del despido discriminatorio de Fontánez, ninguna de las co-Demandadas le notificó a los Demandantes sobre sus derechos a cubierta continuada bajo la Ley COBRA. Por tanto, Fontánez y Santos reclaman, cada uno, la penalidad de $110 diarios establecida en la referida ley federal COBRA contra Triple S y Delta Dental, respectivamente.

**E. Daños y perjuicios – Artículo 1536 del Código Civil de Puerto Rico**

41. Santos sufrió, y aún sufre, severos daños económicos a causa del despido discriminatorio y de la difamación del cual Fontánez fue objeto. Dichos daños económicos se estiman en por lo menos $100,000.00. Del mismo modo, Santos sufrió y aún sufre, severos daños emocionales, por el despido discriminatorio de Fontánez y el efecto negativo que dicho despido tuvo, y continua teniendo, en su hogar. Los daños emocionales de Santos se estiman en, por lo menos, $50,000.00.

42. La parte Querellante por la presente se acoge al procedimiento sumario para reclamaciones laborales establecido en la Ley Núm. 2 del 17 de octubre de 1961, según enmendada ("Ley 2").

### IV. Súplica

**POR TODO LO CUAL**, los Querellantes respetuosamente solicitan del Honorable Tribunal que, luego de los trámites correspondientes, declare Ha Lugar la presente *Querella* y conceda los remedios reclamados, más no menos de 25% en honorarios de abogado.

**RESPETUOSAMENTE SOMETIDA.**

En San Juan, Puerto Rico, hoy 25 de mayo de 2021.

**f/ Andrés C. Gorbea Del Valle**
Lcdo. Andrés C. Gorbea Del Valle
RUA Núm. 16690
PO Box 195191, San Juan, PR 00919
(787) 217-2234
andres_gorbea@yahoo.com

8